UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.:

EDITH FUTCH as personal
representative of the Estate of
GREGORY FUTCH, Deceased,

Plaintiff,

v.

MTC MEDICAL, LLC., a Utah Corporation and:
MANAGEMENT & TRAINING CORP.,
a Delaware Corporation;
MARTHA FORD L.P.N.;
PATRICK HARRIS, D.O.;
JILLIAN BARTOW, L.P.N.;
KELLY HURST, R.N.;
MICHELLE FISHER, L.P.N; each individually and
 as employees of MTC MEDICAL, LLC
AND MANAGEMENT & TRAINING CORP.,

Defendants.

_____/

## COMPLAINT

The Plaintiff, EDITH FUTCH as personal representative of the Estate of GREGORY

FUTCH (hereinafter Futch), deceased, on behalf of herself as the surviving mother and

Futch's estate, sues Defendants, jointly and severally, and alleges:

## PRELIMINARY STATEMENT

1.      Futch was arrested on January 30, 2018, for domestic violence.  The day before his

arrest he was weighed by a doctor and was 154 pounds.  (Ex. 1 – Medical Record).  After

spending sixteen days in solitary confinement in the Putnam County jail he was dead from

starvation and dehydration and according to hospital records he weighed 100 pounds.  (Ex. 2 – Medical Records).   The unconscionable and callous conduct of the defendants, in this case, is indefensible both legally and morally and cannot be tolerated in our civilized society. The Fourteenth Amendment to the United States Constitution outlaws the defendants' conduct and provides a legal remedy to the plaintiff, Edith Futch.

## JURISDICTION

2.      Counts 1 - 6 of this action are brought pursuant to 42 U.S.C. §1983, and the Fourteenth Amendment to the United States Constitution as Futch was a pretrial detainee at all relevant times.  Jurisdiction is based upon 28 U.S.C. §1331, §1343, and 42 U.S.C. § 1983 and §1988.

3.      The federal violations were committed as a result of the deliberate indifference of all of the Defendants.

4.      The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court in and for the Middle District of Florida. In connection with the acts, practices, and violations alleged herein, each Defendant has, directly or indirectly, violated the constitutional rights of Futch.

5.      Divisional venue under Local Rule 1.02(c) is in Jacksonville because all of the events leading to the claims for relief arose in Putnam County, Florida.

6.      All conditions precedent under Florida law to the filing of this lawsuit have been satisfied.

2

7.      The Plaintiff seeks an award of damages for mental and emotional injuries, funeral expenses, punitive damages, court costs and attorney fees. The Personal Representative of the Estate of Futch also claims survival damages under Section 46.021, Florida Statutes, as Futch suffered past physical, mental, emotional pain and suffering, disfigurement and loss of enjoyment of life when he was held in the Putnam County Jail.

## PARTIES

8.      Futch, and his Personal Representative, at all times material hereto, have been residents of Putnam County, Florida.

9.      At all times relevant hereto, Defendant Management & Training Corp. (hereinafter MTC) is a foreign corporation, organized under the laws of the State of Delaware, authorized to do business in the State of Florida, with a place of business in Putnam County, Florida and whose business has an impact on and interaction with interstate and intrastate commerce.

10.     At all times relevant hereto, Defendant MTC Medical, LLC (hereinafter MTC Medical) is a limited liability corporation, organized under the laws of the State of Utah, authorized to do business in the State of Florida and is a subsidiary of defendant MTC.  MTC Medical has its principal place of business at the Putnam County Jail in Putnam County, Florida and their business has an impact on and interaction with interstate and intrastate commerce.

11.     The Defendant MARTHA FORD L.P.N., (hereinafter FORD) at all times material herein, was employed by and serving under Defendants MTC and MTC Medical.  Said Defendant is being sued in her individual capacity.

3

12.     The Defendant PATRICK HARRIS, D.O (hereinafter HARRIS) at all times material herein, was employed by and serving under Defendants MTC and MTC Medical.  Said Defendant is being sued in his individual capacity.

13.     The Defendant JILLIAN BARTOW, L.P.N (hereinafter BARTOW) at all times material herein, was employed by and serving under Defendants MTC and MTC Medical. Said Defendant is being sued in her individual capacity.

14.     The Defendant KELLY HURST, R.N. (hereinafter HURST) at all times material herein, was employed by and serving under Defendants MTC and MTC Medical.  Said Defendant is being sued in her individual capacity.

15.     The Defendant MICHELLE FISHER, L.P.N (hereinafter FISHER) at all times material herein, was employed by and serving under Defendants MTC and MTC Medical. Said Defendant is being sued in her individual capacity.

16.     At all times material hereto, and in all their acts described herein, the Defendants were acting under color of state law and color of their authority as public officials, public employees or employees of MTC and MTC Medical.

17.     The wrongful actions of the Defendants constituted deliberate indifference to Futch's serious medical condition and caused his death.

## ALLEGATIONS OF FACTS

18.     On January 29, 2018, the day before Futch was booked into the Putnam County Jail, doctor Pardo examined him at St. Joseph Interventional Pain Specialists.  Doctor Pardo documented that Futch weighed 154 pounds.  (Ex. 1).

19.     The next day on January 30, 2018, at about 5:00 pm, Futch was arrested at his home

after an altercation with his mother.  The altercation was caused by Futch's mental illness. According to the arrest report, Futch was yelling at the voices in his head and his mother before he struck his mother.  When the officers arrived, they documented that Futch volunteered to speak with them and then began repeating "I believe in god."

20.     In the days immediately preceding his arrest Futch's mother and brother were in contact with Putnam County Sheriff's Office Captain Ussery regarding Futch's need for emergency mental health treatment. (Ex. 3 – Text messages with Cpt Ussery).  Unfourently, their plan to get Futch the emergency mental health care he needed could not be acted upon before Futch was arrested.

21.     Immediately after his arrest, Futch's mother contacted Captian Ussery pleading to get Futch "the mental health care he so desperately needs" and stating that she "hate[s] to think of him in jail, being mentally ill and also disabled."  (Id. at Pg. 3).

22.     In the days after Futch's arrest, his mother contacted the jail several times in an attempt to visit her son.  Each time she was told that she could not visit Futch unless he added her to his list of his approved visitors using a computer in the jail.  Futch's mother explained that Futch could not use a computer and requested that Deloach's deputies assist Futch to add her name to the visitor list, but each time she was told by the deputies that they could not do that for her.  Also, Futch's mother was told that she could not bond Futch out of jail because she was the listed victim on the battery case and therefore she was not allowed to post his bond.  Therefore, Futch's mother was forced to wait and hope that Deloach's employees and the jail's medical providers, MTC and MTC Medical would care for her son.

23.     Meanwhile, Futch began deteriorating both mentally and physically in the jail.  Per jail records, on the day Futch was arrested he had to be physically escorted to his cell because he kept spinning around in full circles when deputies attempted to move him.

24.     On January 31, 2018, at 4:53 AM Futch refused his breakfast because he was vomiting.

25.     On January 31, 2018, at Defendant Bartow, an MTC medical employee, examined Futch and determined that he was dehydrated.  This information was conveyed to Defendant Hurst.

26.     On February 1, 2018, at 8:35 AM, Futch was examined by Defendants Fisher and Hurst because Futch was vomiting.  Futch showed signs of dehydration and complained that he has been vomiting for the past six days.  This information was conveyed to Defendant Harris who authorized that Futch be sent to the hospital.

27.     On February 1, 2018, at 10:25 AM, Futch was brought to the Putnam Community medical center for vomiting and dehydration.  Based on the medical records Futch reported that the nausea and vomiting began two weeks ago and he has been unable to keep any food or liquid down.  The doctor at the hospital described Futch as well nourished, well-appearing, well developed and well hydrated.  Futch was given 2,000ML of salt water through an IV and Ondansetron, a medication which decreases vomiting.  The hospital also found that Futch suffered from COPD and had both opiates and benzodiazepines in his blood.

28.     The hospital's discharge instructions state that "the patient and the caregivers were aware that any significant change in condition or worsening of symptoms should prompt an immediate return to this or the closest emergency department or a call to 911."

29.     On February 1, 2018, at 2:40 PM Futch was moved to solitary confinement because of mental health.

30.     On February 2, 2018, Defendant Fisher documented that Futch was on the floor of his solitary cell yelling that he needed fluids.

31.     From February 2 to February 5, 2018, Futch was housed in his isolation cell.  He

continued to vomit and was unable to eat or drink.  Defendants Ford, Bartow, Hurst, Fisher and Harris were all aware that Futch continued to vomit and was not eating.  All of these defendants failed to provide any care or treatment.

32.     On February 5, 2018, it is documented that Futch refused his lunch.

33.     On February 7, 2018, at 8:51 AM Defendant Ford examined Futch and found that he was having difficulty breathing, appeared dehydrated and his skin was positive for tenting. Tenting of skin is defined as a slow return of the skin to its normal position after being pinched and is a sign of dehydration.  Defendant Ford made Defendant Hurst aware of her finding, and Futch was put on the list to see Defendant Harris.

34.     Defendant Harris is the only doctor employed by MTC and MTC Medical, and he is only physically present in the jail for four hours per week.

35.     On February 7, 2018, at 9:00 AM, Futch was seen by Defendant Harris because of Futch's dehydration and prior hospitalization for dehydration.  Per Defendant Harris' records Futch stated that he has constantly been vomiting and has not been able to keep anything down for the last two weeks.   Defendant Harris did not order any laboratory studies to evaluate the state of Futch's dehydration and his complaint of constant vomiting.  He did not weigh Futch or request that he be weighed.  Harris did not obtain any past medical history. He did not review the medical record from Putnam County Hospital which demonstrated that Futch had positive urine toxicology for opiates and benzodiazepines, even though his examination was prompted as a follow-up for that hospitalization.  He did recommend starting omeprazole, continuing ondansetron (Zofran), for Futch's vomiting and encourage liquids, and psychiatry evaluation.

36.     On February 7, 2018, Futch did not receive the Ondansetron or Omeprazole that defendant Harris had ordered to treat Futch's vomiting.

37.     On February 7, 2018, at 3:40 PM a deputy documented that Futch was throwing himself to the ground, was unable to walk and was complaining of medical issues.

38.     On February 8, 2018, the nurse dispensing medications could not give Futch the omeprazole because it was not on the medication cart.

39.     Dr. Mhatre, the facility psychiatrist, followed upon on Defendant Harris' consultation request on February 8.  He wrote: "Seen at the request of Dr. Harris due to concerns for malingering." "Hx of seizures started two weeks ago." His consultation concluded: "Malingering and acting out to get attention no meds when has sob (shortness of breath).  He has been checked, and all vital signs and 02 sat were normal."  Dr. Mhatre did not check Futch's oxygen saturation during his examination, did not ask any questions about Futch's complaint that he was having difficulty breathing or vomiting for the past two weeks, and failed to review the February 1 hospitalization which reported severe chronic obstructive lung disease, as well as positive urine toxicology for opiates and benzodiazepine.

40.     On February 9, 2018, Futch was given one dose of ondansetron, for vomiting, but again he did not receive omeprazole because it was not available in the nurse's medication cart.

41.      On February 10, 2018, it is documented that Futch refused his lunch and dinner.

42.     On February 11, 2018, it is documented that Futch refused breakfast, lunch, and dinner.  According to Deputy Schott's report when Futch does try to eat a bit of food, he throws it up.  Corporal Greco alerted Defendant Bartow that Futch was not eating and consistently vomiting.

43.     On February 11, 2018, at 1:25 PM, Defendant Bartow examined Futch and relayed the symptom of constant vomiting to Defendant Harris who ordered that Futch only be monitored.  At this point, Defendant Bartow, Defendant Harris or any reasonable medical

8

provider would have recognized Futch's substantial weight loss and identified his medical condition as an emergency that required immediate treatment and transfer to an outside hospital.  However, Defendant Bartow and Defendant Harris failed to provide any care or treatment or have Futch moved to an outside hospital.

44.     On February 11, 2018, Deloach's deputies started a "daily meal intake form" for Futch.  Per Deloach's Standard Operating Procedures when the meal intake form is initiated the medical section (defendants MTC and MTC Medical) are required to:

   a.  Evaluate the inmate for possible psychological problems;

   b.  Evaluate the inmate for weight loss or medical conditions on a daily basis;

   c.  Review and evaluate the daily meal intake form on a daily basis.  This includes daily documentation of the inmate's vital signs to include daily weight checks;

   d.  Document all actions in the inmate's health care records.

45.     From February 12 to February 15, 2018, Futch did not eat or drink anything, he was never given his medication, he was not evaluated for psychological problems, his vitals were not taken, and he was never put on a scale.  Futch was never weighted in the jail – not even when he was booked.  Futch's booking sheet states he was 220 pounds.  Futch languished in his isolation cell dying.  During this period Futch was observed by five different deputies, Defendant Harris, Defendant Ford, Defendant Hurst, Defendant Fisher, and Defendant Bartow.  Each of these individuals had seen Futch on a daily basis since his arrest, and therefore they were all aware that Futch was starving to death and that he has lost a substantial amount of weight since he was booked.  However, they all failed to provide the care and treatment they knew Futch needed to survive or have Futch transferred to an outside hospital for care.

46.    On February 15, 2018, at 8:40 AM the expected a medical emergency occurred. Officer Laura Lynn Jones reported the following incident:  On February 15, 2018, at approximately 8:40 hours, Corporal Norton, Corrections Deputy Brady, Nurse Ford and I entered North Delta 117 due to a possible medical emergency with Inmate Futch.  Inmate Futch was laying on the Floor conscious.  Nurse Ford took I/M Futch's vital signs, which were as follows:  Blood Pressure 116/93 heart rate of 68, temp 97.8, and oxygen level 76%. Major Harrell responded as well.  Cpl. Norton and I placed I/M Futch back on his bed, and gave him some water to drink."

47.    Defendant Ford's medical note regarding the emergency at 8:40 AM on February 15, 2018, is as follows:  "During AM med pass, tried to perform Health Appraisal on I/M Futch, but was unable to cooperate.  Continued to pass meds on D Block, then noticed Inmate was lying on the floor of his cell.  Tried to communicate with him, but he was unable to respond to questions, speech not clear/normal, unable to sit up on his own A&O x 0 (not alert, not oriented) tenting (a slow return of the skin to its normal position after being pinched, a sign of dehydration) noted on posterior aspect of right hand.  Vitals taken:  Manual BP 116/93, Pulse 111, O2 76%, Temp 97.4.  Pupils constricted and fixed; eyes unable to follow movement, when moving pen in front of his eyes.  Notified Nurse Supervisor K. Hurst, RN of IM's vitals/condition.  She arrives at the scene, checked his mouth and skin turgor (Sign of dehydration) of chest; she stated both were good.  The officers were asked to move him back to his bunk, keep a close eye on him, and to alert medical if his status changed.  Medical will continue to monitor."

48.    This action by Defendants' Ford and Hurst is incomprehensible.  When a patient who has not eaten for more than a week demonstrates a major neurological change, has a critical drop in his oxygen saturation, he requires emergency transport to a medical facility with

emergency capabilities.  The decision by Hurst and Ford to leave Futch to deteriorate in his isolation cell is shocking and contributed to his death from untreated starvation and fluid deprivation.

49.     At the above date and time, Futch had lost 54 pounds in sixteen days and was at death's door.  Defendants Ford, Fisher, Bartow, Hurst, and Harris had watched Futch starve over the past two and half weeks and they were all aware of his visible and dramatic weight loss.  However, none of them attempted to provide any care or treatment.  They failed to transfer him to an outside hospital for emergency care when any reasonable person would have known that emergency care was required to prevent Futch's imminent death.

50.     Predictably, one hour and five minutes later Futch was unconscious.  Officer Allen J. Norton, the floor supervisor, described his encounter with Mr. Futch:  "On Thursday, February 15, 2018, approximately 0945 while assigned as North Pod Housing Supervisor, I was advised that there was an unresponsive inmate in North Pod D Block (ND).  I immediately responded to see Corrections Deputy Bradford with ND 117 open and inmate Gregory Futch laying on the Floor.  Medical was called back to ND to assess I/M Futch due to being on the floor of the cell and being unresponsive.  I witnessed I/M Futch breathing but was not cooperating to any verbal commands.  Medical arrived approximately 0950 hours with the blood pressure machine to take I/M Futch's vitals.  The blood pressure machine was coming up with no results after multiple times of trying to get I/M Futch's vitals.  Nurse Kelly Hurst was standing in ND 117 with D/D Brady, C/D Jones, Nurse Martha Ford, and myself.  Nurse Hurst stated that I/M Futch was going to be moved to a Medical Isolation Cell for further observation.  At this time Sergeant Silva stepped back to North Pod as C/D Jones, and I placed I/M Futch in a wheelchair.  Once I/M Futch was placed in a wheelchair, I saw where I/M Futch had urinated all over the floor and himself.  I transported I/M Futch via

wheelchair to medical to place him in an isolation cell, Sgt. Silva and I changed out I/M Futch in a new pair of shorts.  I placed the soiled clothes inside a red biohazard bag and disposed of properly.  Nothing further to report."

51.    Defendant Ford dictated the following note regarding Futch at approximately 10:00 AM on February 15, 2018.  "At approximately 1000 hours, Security alerted medical that I/M Futch was found lying on the concrete floor next to his bunk.  Medical responded; unable to get any vitals, unable to respond to any questions; notified Nurse supervisor, K. Hurst, RN who asked security to transport IM Futch to medical for further evaluation.  Once in medical K. Hurst RN contacted Dr. Harris, who ordered an EKG along with another set of vitals.  Vitals taken: BP taken manually 114/76, P 116, Temp 97.8. Unable to get O2 because his fingers were cold.  EKG sent to Dr. Harris for review.  Noticed mottling on the chest and B/L (bilateral) thighs, placed a blanket under his head for a pillow and covered him with a second one to help warm him. IM was experiencing short periods of apnea.  Reported findings to Nurse Supervisor K. Hurst RN."

52.    Defendant Harris was given all of the above information at 10:40 AM and his response was to order that the medical staff continue to monitor Futch and not move him to the hospital.

53.    The conduct of defendants Harris, Hurst and Ford is inhumane.  Futch arrived in the Medical area around 10:00 AM on February 15.  Nursing staff could not obtain any blood pressure reading using the electronic machine.  After some period they did measure a blood pressure of 114/76 using a manual blood pressure device.  His pulse was still rapid, now 116 beats per minute.  Defendants Hurst and Ford were unable to measure oxygen saturation because "his fingers were cold."  Hurst and Ford described Futch's chest and thighs as "mottled," a discoloration of the skin which often occurs before death. An EKG was

obtained.  Futch's breathing was abnormal, with 20-30 seconds between breaths.  According to Ford's note, Dr. Harris was informed of this situation, provided with the EKG, and, at 10:42 AM, he ordered that Futch remains at the jail.   It is unconscionable for Defendant Harris to choose to keep Futch at the jail, without oxygen, without fluids, in a deteriorating unconscious state with life-threatening low levels of oxygenation.   Harris' actions at this moment, and in his previous failure to follow-up on Futch's unexplained prolonged vomiting, prolonged starvation, and observed shortness of breath contributed substantially to his death from multi-organ failure.  Futch's vomiting continued for two weeks after his February 1, 2018 hospitalization.  During this period Harris obtained no laboratory or radiology studies and failed to obtain any consultation or to order emergency evaluation and treatment.

54.   Harris, Ford, Hurst, Fisher, and Bartow watched Futch die from starvation and dehydration.  They documented that he wasn't eating, and did nothing.

55.   There is a video of Futch lying on the medical cell floor from about 9:55 AM until about 11:05 AM.  Futch is clearly about to die.  He is stripped to his underwear, and he is not conscious.  His body is emaciated, and his breathing goes from rapid sips of air to deep, anguished gulps.  Any reasonable person seeing Futch during this time would recognize that Futch was dying.

56.   Finally at 11:05 AM Major Harrell can be seen on the video looking at Futch.  He contacts EMS and has Futch transported to the hospital.

57.   Futch's jail medical records indicate that he refused to take his prescribed medication, Omeprazole, on February 16, 2018, and on the same day the records show that he did not receive his other medication, Ondansetron because it was on the nurse's medical cart.  However, Futch was not in the jail at this time as he had been transported to the hospital the previous day. (Ex. 4)

13

58.     Futch arrived at Putnam Community Medical Center at 12:10 PM on February 15, 2018.  He was unresponsive.  Correctional staff reported to Emergency room staff that Futch had "declining mental acuity since 1/30/2018" and that he had not been eating.  Futch's respiratory rate when he arrived at the hospital was 40 per minute; he was immediately intubated (breathing tube inserted into the trachea).

59.     Futch was critically ill when he arrived at the Emergency Room.  He was unconscious and cold to touch.  He was in respiratory failure and required emergency intubation.  He had severe, life-threatening hypernatremia with a serum sodium of 184 mmol/L (normal range is 135-150 mmol/L).  His kidneys had failed; his BUN was 142 mg/dL (normal range is 6-19 mg/dL) and Creatinine 5.26 mg/dL (normal range is 0.55-1.30 mg/dL).  He was in shock because of dehydration and had severe lactic acidosis with a serum lactate of 18.1 mmol/L (normal range is 0.4-2.0 mmol/L), and an arterial pH of 7.14 (normal range is 7.35-7.45).  His brain wasn't working, his lungs weren't working, his kidneys weren't working, and his circulatory system had failed.  He had multi-organ failure.

60.     Futch's weight the day before his admission to Putnam County Jail was 154 pounds. (Ex. 1).  His weight on admission to Putnam Community Medical Center on February 15 was 100 pounds, (Ex. 2) and his albumin (protein in the serum which correlates with nutritional status) was severely low at 2.5 g/dL (normal range is 3.4/8.1 g/dL).  He was diagnosed as having severe protein-calorie malnutrition.  Futch had starved to death.

61.     Following intubation in the Emergency Room, Futch was transferred directly in the Intensive Care Unit.  He was aggressively treated with intravenous fluids, and medications to maintain his blood pressure. He was maintained on mechanical ventilation and required sedation.

14

62.     Despite aggressive medical management, medical staff in the intensive care unit were unable to reverse his respiratory and circulatory failure.  On February 17, 2018, at 3:00 AM, Futch's family signed a "Do Not Resuscitate" order.  Gregory Futch died, with his family by his side, at 3:30 AM.

63.     Futch of died of multi-organ failure due to severe protein and calorie malnutrition, along with severe dehydration secondary to not eating or drinking for two weeks.

64.     Futch's death was preventable.  He died because didn't eat or drink for many days.  During this period he experienced constant vomiting.  No autopsy was performed.  However, the fact that he was vomiting constantly and unable to eat or drink was observed by the correction staff, and defendants Ford, Harris, Bartow, Hurst and Fisher, and confirmed by his life-threatening dehydration and hypernatremia (elevated sodium) when he was hospitalized.

65.     The Death of Gregory Futch was easily preventable.  Defendants Ford, Harris, Bartow, Hurst and Fisher were aware that Futch was not eating, that he was getting his medication, and they did nothing to address the reasons or the consequences.  Their inaction, while fully aware of his deteriorating medical condition, is inexcusable, terribly disturbing and caused Futch's preventable and tragic death.


**COUNT 1:  42 U.S.C. §1983 CLAIM AGAINST DEFENDANTS MTC AND MTC MEDICAL**

66.     The Plaintiff realleges paragraphs 1-65.

67.     MTC and MTC Medical entered into a Health Services Agreement with the Sheriff of Putnam County, H.D. "Gator" Deloach, (hereinafter Deloach) in April 2016, whereby MTC and MTC Medical agreed to provide comprehensive health care within the Putnam

15

County Jail.

68.     Said agreement states that MTC and MTC Medical will staff the jail with a doctor for four hours per week.  This doctor is Defendant Harris.

69.     An informal policy or custom exists within the Putnam jail whereby MTC and MTC Medical's staff will not send inmates to the hospital without the authorization of Defendant Harris.

70.     MTC and MTC medical are aware of this informal policy or custom and have accepted that the foreseeable consequences will be that inmates will not be transferred to outside hospitals when it is medically necessary and this will result in preventable suffering and deaths.

71.     This informal policy has caused poor medical outcomes in the past and MTC and MTC Medical was aware these instances prior Futch's time in the jail.  However, MTC and MTC Medical failed to address these known deficiencies with the foreseeable result being that other inmates, such as Futch, would be harmed.

72.     Futch was sent to the hospital on February 1, 2018, because Defendant Harris approved the transfer.

73.     Without Defendant Harris' authorization, no inmate will be sent to the hospital even in cases of medical emergencies.

74.     Because Defendant Harris did not authorize Futch's transfer to a hospital for care from February 2nd to February 15th Futch remained in his solitary cell for two weeks, not eating and constantly vomiting until he died from starvation and dehydration.

75.     If Futch had been transferred to an outside hospital when it was medically necessary, he would have been treated and would have survived.

16

76.     Defendant MTC and MTC Medical, with the authority of State law, acted in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power they possessed.

77.     Futch has been a victim of the above-mentioned illegal treatment and said illegal treatment was the direct result of the previously described informal policies or customs of MTC and MTC Medical.

78.     The deliberate indifference of MTC and MTC Medical violated the constitutional rights of Futch for which 42 U.S.C. § 1983 provides a remedy.

79.     Futch suffered a horrible, painful and preventable death as a result of MTC and MTC Medical's actions.

     **WHEREFORE**, PLAINTIFFS demand compensatory and punitive damages against Defendant MTC and MTC Medical, attorney fees, costs, and trial by jury for all issues so triable by right.

### COUNT 2:  42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT FORD

80.     The Plaintiffs reallege paragraphs 1-8, 11, 17, 18, 23, 24, 27-38 and 40-65.

81.     At all times material hereto Defendant Ford, was employed by MTC and MTC Medical as an LPN and was responsible for the medical and mental health care provided to Futch. This medical and mental healthcare included monitoring, diagnosis, and treatment of Futch's serious medical and mental health conditions. The transferring Futch to a hospital for physical health problems when it became apparent that he was in urgent need of hospitalization were included in the responsibilities of Ford.

82.     Defendant Ford was acting under color of state law as an employee of Defendant MTC and MTC Medical when she subjected Futch to the deprivation of rights and privileges secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

83.     The slow and preventable death of Futch was a reasonably foreseeable consequence of this Defendant's deliberate indifference to her obligation to provide appropriate medical and mental health care and to transfer Futch to the hospital without any medically unjustified delay.

84.     Ford breached the duty of care that she owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite her notice and knowledge of Futch's serious mental health and medical conditions and need of hospitalization.

85.     The deliberate indifference of Ford violated the constitutional rights of Futch for which 42 U.S.C. §1983 provides a remedy.

86.     As a direct and proximate result of the violation of Futch's constitutional rights by Defendant Ford, Futch suffered a horrible and preventable death.

**WHEREFORE**, PLAINTIFF demands compensatory and punitive damages against Defendant Ford, attorney fees, costs, and trial by jury for all issues so triable by right.


## COUNT 3: 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT HARRIS

87.     The Plaintiffs reallege paragraphs 1-8, 12, 17, 18, 23-65.

88.     At all times material hereto Defendant Harris was employed by MTC and MTC Medical as a doctor, and was Futch's primary doctor responsible for the mental health and

18

medical care provided to Futch. This mental health and medical care included monitoring Futch as his health deteriorated, diagnosing and treating Futch's serious medical conditions and transferring Futch to a hospital to treat his mental health and serious medical conditions when it became apparent that Futch was in urgent need of hospitalization.

89.     Defendant Harris was acting under color of state law as an employee of Defendant MTC and MTC Medical when he subjected Futch to the deprivation of rights and privileges secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

90.     The slow and preventable death of Futch was a reasonably foreseeable consequence of this Defendant's deliberate indifference to his obligation to provide appropriate mental health and medical care and to transfer Futch to the hospital without any medically unjustified delay.

91.     Harris breached the duty of care that he owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite his notice and knowledge of Futch's serious mental health and medical conditions and need of hospitalization.

92.     The deliberate indifference of this Defendant violated the constitutional rights of Futch for which 42 U.S.C. §1983 provides a remedy.

93.     As a direct and proximate result of the violation of Futch's constitutional rights by Defendant Harris, Futch suffered a horrible and preventable death.

    **WHEREFORE**, PLAINTIFF demands compensatory and punitive damages against Defendant Harris, attorney fees, costs, and trial by jury for all issues so triable by right.

## COUNT 4:   42 U.S.C. §1983 CLAIM AGAINST DEFENDANT BARTOW

94.      The Plaintiffs reallege paragraphs 1-8, 13, 17, 18, 23-65.

95.      At all times material hereto, the Defendant Bartow was employed by MTC and MTC Medical as an LPN.  Bartow had several contacts with Futch and was responsible for the mental health and medical care provided to Futch.  This mental health and medical care included monitoring Futch, diagnosing and treating Futch's serious mental health and medical conditions, referring Futch to another MTC or MTC Medical provider for care and treatment and transferring Futch to a hospital to treat his mental health and serious medical conditions when it became apparent that Futch was in urgent need of hospitalization.

96.      Defendant Bartow was acting under color of state law as an employee of MTC and MTC Medical when she subjected Futch to the deprivation of rights and privileges secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

97.      The slow and preventable death of Futch was a reasonably foreseeable consequence of Bartow's deliberate indifference to her obligation to provide appropriate mental health and medical care and to transfer Futch to the hospital without any medically unjustified delay.

98.      Bartow breached the duty of care that she owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite her notice and knowledge of Futch's serious medical conditions and need of hospitalization.

99.      The deliberate indifference of Bartow violated the constitutional rights of Futch for which 42 U.S.C. §1983 provides a remedy.

100.     As a direct and proximate result of the violation of Futch's constitutional rights by Bartow, Futch suffered a horrible and preventable death.

**WHEREFORE**, PLAINTIFF demands compensatory and punitive damages against Defendant Bartow, attorney fees, costs, and trial by jury for all issues so triable by right.

## COUNT 5: 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT HURST

101.   The Plaintiffs reallege paragraphs 1-8, 14, 17, 18, 23-65.

102.   At all times material hereto Hurst was employed by MTC and MTC Medical as a nurse and was responsible for the mental health and medical care provided to Futch.  This mental health and medical care included monitoring Futch as his health deteriorated, diagnosing and treating Futch's serious mental health and medical conditions and transferring Futch to a hospital to treat his mental health and serious medical conditions when it became apparent that Futch was in urgent need of hospitalization.

103.   Hurst was acting under color of state law as an employee of MTC and MTC Medical when she subjected Futch to the deprivation of rights and privileges secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

104.   The slow and preventable death of Futch was a reasonably foreseeable consequence of Hurst's deliberate indifference to her obligation to provide appropriate mental health and medical care and to transfer Futch to the hospital without any medically unjustified delay.

105.   Hurst breached the duty of care that she owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite her notice and knowledge of Futch's serious medical conditions and need of hospitalization.

106.   The deliberate indifference of Hurst violated the constitutional rights of Futch for which 42 U.S.C. §1983 provides a remedy.

107.   As a direct and proximate result of the violation of Futch's constitutional rights by

Hurst, Futch suffered a horrible and preventable death.

**WHEREFORE**, PLAINTIFFS demand compensatory and punitive damages against Defendant Hurst, attorney fees, costs, and trial by jury for all issues so triable by right.

### COUNT 6:   42 U.S.C. §1983 CLAIM AGAINST DEFENDANT FISHER

108.     The Plaintiffs reallege paragraphs 1-8, 14, 17, 18, 23-65.

109.     At all times material hereto Defendant Fisher was employed by MTC and MTC Medical as an LPN and she was responsible for the mental health and medical care provided to Futch. This mental health and medical care included monitoring Futch as his health deteriorated, diagnosing and treating Futch's serious mental health and medical conditions and transferring Futch to a hospital to treat his serious medical conditions when it became clear that Futch was in urgent need of hospitalization

110.     Fisher was acting under color of state law as an employee of MTC and MTC Medical when she subjected Futch to the deprivation of rights and privileges secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

111.     The slow and preventable death of Futch was a reasonably foreseeable consequence of Fisher's deliberate indifference to her obligation to provide appropriate mental health and medical care and to transfer Futch to the hospital without any medically unjustified delay.

112.     Fisher breached the duty of care that she owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite her notice and knowledge of Futch's serious medical conditions and need of hospitalization.

113.     The deliberate indifference of Fisher violated the constitutional rights of Futch for which 42 U.S.C. §1983 provides a remedy.

114.    As a direct and proximate result of the violation of Futch's constitutional rights by Fisher, Futch suffered a horrible and preventable death.

**WHEREFORE**, PLAINTIFFS demand compensatory and punitive damages against Defendant Fisher, attorney fees, costs, and trial by jury for all issues so triable by right.

Dated: 11/8/18

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

Greg Lauer, Esq.

Lauer & Currie, P.A.

644 SE 5th Avenue

Fort Lauderdale, Fl 33301

Phone:(954) 533-4498

Facsimile:(954) 533-4501

By: S/Greg M. Lauer

Greg M. Lauer

Fla. Bar No. 652709

*greg@law-lc.com*

By: S/Christina M. Currie

Christina M. Currie

Fla. Bar No. 90987

*cmc@law-lc.com*