90266-10/7586493

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:18-cv-01323-BJD-MCR

EDITH FUTCH as personal
Representative of the Estate of
GREGORY FUTCH, Deceased,

Plaintiff,

v.

MTC MEDICAL, LLC, a Utah Corporation
and: MANAGEMENT & TRAINING
CORP., a Delaware Corporation; MARTHA
FORD, L.P.N.; PATRICK HARRIS, D.O.;
JILLIAN BARTOW, L.P.N.; KELLY
HURST, R.N.; MICHELLE FISHER,
L.P.N.; each individually and as employees
of   MTC   MEDICAL,   LLC   AND
MANAGEMENT & TRAINING CORP.,

Defendants.
_____/

## DEFENDANT, PATRICK HARRIS, D.O.'S MOTION TO DISMISS PLAINITFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

The Defendant, Patrick Harris, D.O. ("the Defendant" or "Dr. Harris"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby applies to the Court for an Order seeking dismissal of this action. The Defendant submits to the Court that the Plaintiff has failed to plead a valid cause of action upon which relief may be granted and as such, a dismissal is warranted. In support thereof, the Defendant states as follows:

CASE NO. 3:18-cv-01323-BJD-MCR

1.      The Defendant was served with the Plaintiff's Complaint on November

30, 2018. (See Doc. 1).  In her Complaint, Plaintiff alleges a cause of action against Dr.

Harris under 42 U.S.C. § 1983, arguing that her son's, Gregory Futch ("Futch"), Eighth

and Fourteenth Amendment rights were violated "as a result of the deliberate indifference

of all of the Defendants." (See Doc. 1, Jurisdiction, ¶¶ 2-3).

2.      Generally, Plaintiff's claims relate to alleged medical treatment given, as

well as not given, to Futch while he was incarcerated in Putnam County Jail. Plaintiff

alleges "Dr. Harris or any reasonable medical provider would have recognized Futch's

substantial weight loss and identified his medical condition as an emergency that required

immediate treatment and transfer to an outside hospital. However, Dr. Harris failed to

provide any care or treatment or have Futch moved to an outside hospital." (Id., ¶ 43).

3.      Plaintiff alleges on February 7, 2018, Dr. Harris saw Futch "because of

dehydration and prior hospitalization for dehydration." (Id., ¶ 36). Plaintiff claims "Futch

stated he has constantly been vomiting and has not been able to keep anything down for

the last two weeks," yet Dr. Harris did not order any labs, did not weigh Futch, or review

past medical history. (Id., ¶ 3). However, Plaintiff notes Dr. Harris did "recommend

starting omeprazole, continuing ondansetron (Zofran), for Futch's vomiting and

encourage liquids, and psychiatry evaluation." (Id.).

4.      It is alleged that on February 11, 2018, "Dr. Bartow examined Futch and

relayed the symptoms of constant vomiting to Dr. Harris who ordered that Futch only be

monitored." (Id., ¶ 43). Further, Plaintiff avers that on February 15, 2018, Dr. Harris

received information concerning Futch, such as his vital signs and EKG results, notice of

CASE NO. 3:18-cv-01323-BJD-MCR

inability to obtain O2 due to the coldness of his fingers, and that he was experiencing short periods of apnea, and Dr. Harris' "response was to order that the medical staff continue to monitor Futch and not move him to the hospital." (Id., ¶¶ 51-52).

5.     Plaintiff claims that "Dr. Harris' action, and in his previous failure to follow-up on Futch's unexplained prolonged vomiting, prolonged starvation, and observed shortness of breath contributed substantially to his death from multi-organ failure." (Id., ¶ 53).

6.     Plaintiff alleges in Count 3, "42 U.S.C. § 1983 Claim Against Defendant Harris," where she describes how each defendant was personally involved in the alleged wrongful action, Dr. Harris "breached the duty of care that he owed to Futch by failing to assess, medicate, treat, monitor and have Futch sent to a hospital for care, despite his notice and knowledge of Futch's serious mental health and medical conditions and need of hospitalization." (Id., ¶ 91). For all intents and purposes, it is abundantly clear the Plaintiff is seeking to hold Dr. Harris liable for medical negligence.

7.     Plaintiff's claim against Dr. Harris should be dismissed because it is grounded in medical negligence and she has not complied with the mandatory conditions precedent or provided Dr. Harris with a notice of intent letter and corroborating expert affidavit as required under the Florida Statutes governing malpractice actions. See generally Chapter 766, Florida Statutes.

8.     Plaintiff's 42 U.S.C. § 1983 claim likewise must be dismissed because Dr. Harris has qualified immunity against such claims and the Plaintiff has failed to establish that Dr. Harris violated any of his established rights.

- 3 -

CASE NO. 3:18-cv-01323-BJD-MCR

## MEMORANDUM OF LAW IN SUPPORT OF DEFFENDANT'S MOTION TO DISMISS

### STANDARD OF REVIEW

**I.    Motion to Dismiss Standard**

"To survive a motion to dismiss [under rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (alteration added; quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint fails to state a claim when it does not include "enough factual matter" to "give the defendant fair notice of what the...claim is and the grounds upon which it rests[.]" Twombly, 550 U.S. at 555-56; see also Iqbal, 556 U.S. at 678 (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do no suffice.") (citing Twombly, 550 U.S. at 555).

Pleadings must contain "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). To meet the plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1261 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678), abrogated on other grounds by Mohamad v. Palestinian Auth., 556 U.S. 449 (2012).

CASE NO. 3:18-cv-01323-BJD-MCR

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. at 679.

Additionally, in determining whether the plaintiff has properly stated a claim for relief, the court is confined to what is presented within the four corners of the complaint. See, e.g., Garcia v. Copenhaver, Bell & Assocs., 104 F. 3d 1256, 1266 n. 11 (11th Cir. 1997) ("Under 12(b)(6), whether a plaintiff failed to state a claim upon which relief can be granted must be ascertained from the face of the complaint").

## ARGUMENT AND CITATION OF AUTHORITY

**I.  THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO PROVIDE DEFENDANT WITH A NOTICE OF INTENT AND SUPPORTING EXPERT AFFIDAVIT AS REQUIRED BY CHAPTER 766, FLORIDA STATUTES PRIOR TO FILING SUIT**

The Plaintiff failed to allege she filed a Notice of Intent and corroborating expert affidavit in support of her claim against Defendant. Therefore, Plaintiff's Complaint should be dismissed for failure to comply with Florida Statutes 766.106 and 766.203, both of which provide mandatory presuit requirements that must be met before asserting claims sounding in medical malpractice.

Importantly, Plaintiff's claim against Defendant is subject to mandatory presuit requirements under subjection 766.106(1)(a). A "claim for medical negligence" or "claim for medical malpractice" means a claim, arising out of the rendering of, or the failure to render, medical care or services. § 766.106(1)(a), Fla. Stat. (2016).

- 5 -

CASE NO. 3:18-cv-01323-BJD-MCR

In the instant matter, Plaintiff ignored that she is required to provide the notice of intent and corroborating expert affidavit. Chapter 766 does not provide any procedure that would otherwise waive or relieve a plaintiff of the mandatory condition precedent requirements of Chapter 766. There is no law which permits a personal representative to proceed without an expert; or to have one appointed for her. See University of Miami v. Wilson, 948 So. 2d 774 (Fla. 3d DCA 2006) (involving personal representative of decedent's estate's compliance with the medical malpractice presuit notice requirement of Chapter 766, Florida Statutes (2002)). Without appropriately pleading necessary facts to confirm compliance with the mandatory conditions precedent of a Notice of Intent and corroborating expert's affidavit, the claim must be dismissed. See St. Mary's Hosp. v. Bell, 785 So. 2d 1261, 1262 (Fla. 4th D.C.A. 2001) (certiorari may lie from orders denying motions to dismiss for failure to comply with the presuit requirements in medical malpractice actions; however, certiorari does not lie for appellate courts to re-weigh the evidence presented concerning compliance with the presuit statutory requirements).

In particular, Section 766.106(2)(a) provides that "prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence." The purpose of the medical malpractice presuit requirement is to allow a potential defendant to investigate a claim. University of Miami v. Wilson, 948 So. 2d 774 (Fla. 3d DCA 2006). The policy underlying the medical malpractice scheme is to require the parties to engage in meaningful presuit investigation, discovery, and negotiations, thereby screening out frivolous lawsuits and encouraging prompt resolution of claims. Id. Here,

the Plaintiff clearly did not adhere to the requirements of this statute because a Notice of Intent was never served. Thus, Dr. Harris has been precluded from engaging in any investigation of his own to determine if there is any validity to Plaintiff's claim.

Section 766.203(2) requires plaintiffs to conduct an investigation to "ascertain whether there are reasonable grounds to believe that a) the Defendant was negligent in the care or treatment of the claimant; and b) such negligence resulted in injury to the claimant." Further, § 766.203(2) provides:

> Corroboration of reasonable grounds to initiate medical negligence shall be provided by the claimant's submission of a verified written medical expert opinion as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.

§ 766.203(2), Fla. Stat. (2018).

The Plaintiff did not allege she conducted any investigation or submit an expert affidavit as required by the above statute. The Plaintiff's failure to comply with the proper procedures as mandated in the medical malpractice statutes should preclude furtherance of this case. If the required presuit notice is not given to a health care provider, the complaint can be properly dismissed. Goldfarb v. Urciuoli, 858 So.2d 397 (Fla. 1st DCA 2003).

Even though the procedures set forth in Section 766 *et. seq.* are not intended to deny access to the courts, they are "more than mere technicalities." Largie v. Gregorian, 913 So.2d 635, 638 (Fla. 3d DCA 2005). See also Correa v. Robertson, 693 So.2d 619, 621 (Fla. 2d DCA 1997); Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So.2d 283, 286 (Fla. 5th DCA 2004). Therefore, the Plaintiff should be required to follow the

CASE NO. 3:18-cv-01323-BJD-MCR

proper presuit procedures. Failure to comply with the presuit procedures set forth above subjects a claim to dismissal until such time as the procedures are met.

Additionally, Section 766.104(1), Florida Statutes, provides that

[n]o action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of counsel certifying that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.

§ 766.104(1), Fla. Stat. Because Plaintiff's Complaint is devoid of any certification that a reasonable investigation was performed, her claim fails as a matter of law and should be dismissed.

## II.   DISMISSAL IS MANDATED BECAUSE PLAINTIFF'S COMPLAINT IS LEGALLY FRIVOLOUS AND FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED UNDER 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. To articulate a claim under Section 1983, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998). In addition, where a plaintiff seeks to impose liability on one who is not an active participant in the alleged constitutional deprivation, that plaintiff must allege and establish an affirmative causal connection

- 8 -

CASE NO. 3:18-cv-01323-BJD-MCR

between the defendant's conduct and the constitutional deprivation. Williams v. Bennett, 689 F.2d 1370, 1380-1381 (11th Cir. 1982).

A Section 1983 complainant must support her claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1436 (5th Cir. 1995). Thus, for Plaintiff to recover, she must establish that Dr. Harris deprived her son of a right guaranteed by the constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 139 (1979); Thomas v. Sams, 734 F.2d 185, 191 (5th Cir. 1984), cert. denied, 472 U.S. 1017 (1985).

The constitutional rights of a pretrial detainee spring from the Eighth and Fourteenth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) (minimum standard for providing medical care to pretrial detainee under Fourteenth Amendment is same as minimum standard required under Eighth Amendment for convicted prisoner). This right requires that prison officials provide inmates with adequate medical care. Estelle, 429 U.S. at 103-05. In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104.

Plaintiff must allege and later prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. Farmer v. Brennan, 511 U.S. 825, 834-35 (1994). To state a cause of action under Section 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant. Murphy v.

CASE NO. 3:18-cv-01323-BJD-MCR

Kellar, 950 F.2d 290, 292 (5th Cir. 1992); Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986).

The deliberate indifference standard involves both an objective and a subjective component. The objective component is met by evidence of "serious medical need" which includes, in relevant part, the existence of "chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). The subjective component requires an official to know the facts that could have shown the prisoner's health was in danger and the official must actually believe the prisoner's health is in danger. Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Gamble, 429 U.S. at 104-05. "Facts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981)) (emphasis in original). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." Id.

Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Gamble, 429 U.S. at 105-06; Johnson, 759 F.2d at 1238. Unsuccessful medical

treatment does not give rise to a Section 1983 cause of action, nor does a disagreement between an inmate and a prison physician concerning the appropriateness of certain medical care. Varnado v. Lynaugh, 920 F. 2d 320, 321 (1991); Johnson, 759 F. 2d at 1238. Similarly, a claim that additional diagnostic techniques or forms of treatment should have been utilized is inadequate for purposes of Section 1983. Gamble, 429 U.S. at 107. Hence, allegations of mere negligence, neglect, or medical malpractice on the part of a physician do not state an actionable claim under Section 1983. Varnado, 920 F. 2d at 321 (citing Fielder v. Bosshard, 590 F. 2d 105, 107 (5th Cir. 1979)). As the Supreme Court noted in Gamble, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106 (emphasis added).

Florida courts have also found that a mere difference of opinion between an inmate and prison medical staff does not give rise to an Eighth Amendment violation. See Smith v. Fisher, 965 So.2d 205, 207 (Fla. 4th DCA 2007).

Situations in which courts have found prison medical staff to be deliberately indifferent, and not just exercising differences of professional opinion, have included failure to provide treatment for diagnosed conditions and failure to investigate the medical situation enough to make an informed judgment—including reviewing medical records. See Hudson v. McHugh, 148 F. 3d 859, 861 (7th Cir. 1998); and McElligott v. Foley, 182 F. 3d 1248, 1252, 1256–57 (11th Cir. 1999) (finding in a Florida case that failure to inquire about and treat patient's severe pain, and repeated delays in doctors seeing the patient, could constitute deliberate indifference). Deliberate indifference has also been found where there was grossly inadequate care, a decision to take an easier but

less efficacious course of treatment; and medical care that was so cursory as to amount to no treatment at all. Bingham v. Thomas, 654 F. 3d 1171, 1176 (11th Cir. 2011). A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference. See Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

However, it is well settled that a decision by a prison doctor not to perform additional diagnostic tests or to prescribe other forms of treatment is a matter of medical judgment and does not constitute cruel and unusual punishment. Gamble, 429 U.S. at 109; Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991). As the Supreme Court stated in Gamble, "[a]t most it is medical malpractice, and as such the proper forum is the state court . . ." Id.; see also Brown v. Briscoe, 998 F. 2d 201 (4th Cir. 1993) (affirming district court's dismissal of complaint as frivolous under 28 U.S.C. § 1915 because the defendant nurse was not deliberately indifferent to prisoner's serious medical needs when she administered tuberculosis vaccine even though prisoner allegedly broke out in rash and had told the defendant nurse that he had already received a tuberculosis inoculation).

In the instant action, Plaintiff has not pled sufficient facts from which it could be inferred that Dr. Harris displayed deliberate indifference to Futch's medical condition. To the contrary, the facts as alleged show Dr. Harris performed in accordance with his medical judgment. Specifically, the facts alleged show he prescribed medications to address vomiting, encouraged  liquids, authorized hospitalization after being informed that Futch showed signs of dehydration, and ordered medical staff to continue

monitoring. Furthermore, Dr. Harris was able to perform all of this treatment while being "the only doctor employed by MTC and MTC Medical, and [while being] only physically present in the jail for four hours per week." (See Doc. 1, ¶ 34). Since he was only physically present for four hours per week, when was he present in the Putnam County Jail and what did he actually observe? What information was relayed to Dr. Harris when he was not present in the Putnam County Jail and was this information accurate? Exactly what medical information was relayed to Dr. Harris and when did he have notice of this information? While Plaintiff alleges that "[e]ach of these individuals had seen Futch on a daily basis since his arrest, and therefore they were all aware that Futch was starving to death and that he has lost a substantial amount of weight since he was booked," collective knowledge is not sufficient to satisfy the subjective element of deliberate indifference. See Wright v. Langford, 562 Fed.Appx. 769, 779 (11th Cir. 2014) (emphasis added) (holding that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference") (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)).

There is a dearth of any facts that allege deliberate indifference with regard to Dr. Harris throughout the entire Complaint. At most, the only facts relating to Dr. Harris address his treatment of Futch in accordance with his informed medical judgment. Plaintiff has not pled that Dr. Harris refused to provide treatment to Futch or that he in any way intentionally delayed treatment. Therefore, Plaintiff has certainly not pled a cause of action showing "deliberate indifference" to any of the needs of Mr. Futch. As described above, a decision by a prison doctor not to perform additional diagnostic tests

CASE NO. 3:18-cv-01323-BJD-MCR

or to prescribe other forms of treatment is a matter of medical judgment and does not

constitute cruel and unusual punishment. Certainly the instant allegations do not equate to

"deliberate indifference" against Dr. Harris and as such, the Complaint against him

should be dismissed.

**III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE DEFENDANT HAS QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIM**

The defense of qualified immunity should be resolved at the earliest stage of

litigation, and therefore, is proper for a district court to determine on a motion to dismiss.

Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003). "If a defendant asserts a

qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant

qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly

established constitutional or statutory right." Williams v. Bd. of Regents of Univ. Sys. of

Ga., 477 F. 3d 1282, 1300 (11th Cir. 2007) (citing Williams v. Ala. State Univ., 102 F. 3d

at 1182).

Pleadings for § 1983 cases involving defendants who are able to assert qualified

immunity as a defense are held to comply with the standards described in Iqbal. See

Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); see also Fullman v. Graddick, 739

F. 2d 553, 556-57 (11th Cir. 1984) (holding that in civil rights actions "a complaint will

be dismissed as insufficient where the allegations it contains are vague and conclusory.").

Qualified immunity protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Pearson v.

Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818

CASE NO. 3:18-cv-01323-BJD-MCR

(1982)). This immunity balances the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation when they perform their duties reasonably. Id. This immunity does not protect an official if they know or reasonably should know that their actions violate a plaintiff's constitutional rights. Holmes v. Kucynda, 321 F. 3d 1069, 1077 (11th Cir. 2003). But, it does shield from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F. 3d 1188, 1194 (11th Cir. 2002).

In order for government officials to enjoy qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred. Id. Discretionary job functions involve judgments that "almost inevitably are influenced by the decisionmaker's experiences, values, and emotions." Harlow v. Fitzgerald, 457 U.S. at 816-818. In the instant action, there is nothing alleged which would not otherwise indicate that Dr. Harris was acting in the scope of his discretionary authority when providing medical treatment to Futch. There are literally no facts pled that would in any way suggest that Dr. Harris was not acting within the scope of his discretionary authority; and therefore, he would be entitled to immunity.

Because it is alleged by implication that Dr. Harris was acting within his discretionary authority, the burden falls on the Plaintiff to demonstrate that qualified immunity is inappropriate. Id. The Supreme Court created a beneficial, although not mandatory, two-part analysis to determine whether qualified immunity is appropriate. See Pearson v. Callahan, 555 U.S. 223, 235 (2009). The threshold question is whether the

alleged facts demonstrate that Defendant violated any constitutional rights of the Plaintiff. Gonzalez, 325 F. 3d at 1234. If a constitutional violation is alleged, the final step of the qualified immunity analysis is whether the right was clearly established. Id.

As discussed above, the Plaintiff has failed to allege that Dr. Harris violated any constitutional rights. As against Dr. Harris, Plaintiff simply alleges that he failed to "assess, medicate, treat, monitor and have Futch sent to a hospital for care..." This is an assertion of medical negligence as opposed to a violation of constitutional rights.

Additionally, Plaintiff has failed to show that his rights were "clearly established." Whether a right is clearly established depends on whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001). Dr. Harris is entitled to immunity "unless, at the time of the incident, the preexisting law dictates, that is, truly compels, the conclusion for all reasonable similarly situated public officials that what [a] Defendant was doing violated [a] Plaintiff's federal rights in the circumstances." Marsh v. Butler Cnty., Ala., 268 F. 3d 1014, 1030–31 (11th Cir. 2001) (en banc) (alteration adopted) (quotation marks omitted), abrogated on other grounds by Twombly, 550 U.S. 544.

Clearly, the allegations do not compel the conclusion that Dr. Harris knowingly violated Plaintiff's Eighth or Fourteenth Amendment rights. Plaintiff alleges in essence that Dr. Harris failed to provide adequate medical care despite his knowledge of Futch's "serious mental health and medical conditions and need of hospitalization." (See Doc. 1, ¶ 91). However, no facts were alleged which showed any deliberate indifference

CASE NO. 3:18-cv-01323-BJD-MCR

on behalf of Dr. Harris nor anything that would allow his qualified immunity to be extinguished.

WHEREFORE, Defendant, Patrick Harris, D.O., requests this Court enter an Order dismissing Plaintiff's cause of action against him.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Greg Lauer, Esq., greg@law-lc.com; and Christine M. Currie, Esq., cmc@law-lc.com, on this _____ day of _____, 20___.

/s/ Richard E. Ramsey
Richard E. Ramsey, Esquire
Florida Bar No. 715026
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Defendant Patrick Harris, D.O.
50 N. Laura St., Suite 2700
Jacksonville, FL   32202
Phone: (904) 355-0225
Fax: (904) 355-0226
jaxcrtpleadings@wickersmith.com